```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

RAPHAEL GAYLE,                       :

     Plaintiff,                      :

V.                                   :    Case No. 3:07-CV-684 (RNC)

CONNECTICUT DEPARTMENT OF            :
CORRECTION AND THERESA LANTZ,        :

     Defendants.                     :
```

RULING AND ORDER

Plaintiff, a black male of Jamaican origin, brings this action against his former employer, the Connecticut Department of Correction ("DOC"), and DOC Commissioner Theresa Lantz, claiming that his employment as a correctional officer was terminated because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff's employment was terminated by DOC after an inmate committed suicide during the plaintiff's shift in the restrictive housing unit at the Bridgeport Correctional Center (BCC).  DOC found that the plaintiff failed to perform his duty to tour the area of the inmate's cell every fifteen minutes, falsified the logbook by recording tours he did not perform and provided false information during the investigation of the suicide, all in violation of DOC Administrative Directives. Plaintiff's union filed a grievance challenging his dismissal.

After a three-day hearing, an independent arbitrator determined that the termination was supported by just cause.  Defendants have moved for summary judgment contending that a jury would have to reject plaintiff's claims.  I agree.[1]

I. Summary Judgment

Summary judgment may be granted when "there is no genuine issue as to any material fact" and the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  In making this determination, the evidence must be viewed in a manner most favorable to the nonmoving party.

II. Background

The parties' Local Rule 56 Statements, and supporting evidence, establish the following.  Plaintiff was employed by DOC from 1990 to December 2004.  He received "fully successful" annual reviews and numerous commendations.

---

[1] The complaint includes a claim under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60, et seq. Defendants have moved for summary judgment on this claim contending that it is barred by the Eleventh Amendment. Plaintiff's memorandum in opposition makes no reference to the claim, which is therefore deemed abandoned.

Plaintiff was often assigned to BCC's restrictive housing unit.  A standing order requires officers on duty in the unit to conduct tours "not less than four times per hour and not in excess of fifteen minutes apart."  This order implements DOC Administrative Directive 6.1, which provides that "[s]pecial management inmates shall be personally observed by a correctional staff member at least every 15 minutes on an irregular schedule and on a more frequent basis for problem inmates."  One of the purposes of this requirement is to reduce the risk of a successful suicide attempt by a person in custody.

On June 11, 2004, a suicide occurred in the unit while the plaintiff was on duty.  The victim of the suicide was a fifty-two year old male with no prior criminal record who was being held on a $2 million bond in connection with a murder charge.  A court order committing him to DOC custody contained a notation for "Suicide Watch with Medical Attention."  Medical personnel had cleared him for placement in the unit two days earlier.  Plaintiff was not informed of the inmate's mental health status.

Plaintiff realized there was a problem when he checked the inmate's cell at 9:43 p.m.  The lights in the cell were off but the inmate was not in his bunk.  Using a flashlight, the plaintiff was able to see part of the inmate's body in a corner.  He called to the inmate but got no response.  He then returned to his cubicle, called the control center and asked for any

available officer to come and check on the inmate.  Correctional Officer James Sansone responded and found that the inmate had hung himself using a bed sheet.  At 9:50 p.m., Sansone called a Code White.  Sansone cut the bed sheet with a pocket knife and placed the inmate on the floor.  The inmate was not responsive.  DOC staff tried to resuscitate the inmate to no avail.

DOC's Security Division conducted an investigation into the suicide.  Log book entries by the plaintiff indicated that he toured the unit at 9:15 p.m., 9:20 p.m., and 9:30 p.m.  However, videotape from a surveillance camera showed that he did not tour the unit between 9:14 p.m. and 9:43 p.m., in violation of the requirement that he tour the unit at least once every fifteen minutes.

Plaintiff was interviewed by an investigator in the presence of a union representative.  He stated that he toured the unit at 9:20, as shown by his entry in the log book.  He also maintained that he conducted tours at 8:40 p.m. and 9:00 p.m., as reflected by other log book entries.  The videotape showed, however, that none of these tours was conducted.  Plaintiff was unable to explain the inconsistencies between his log book entries and the videotape.

As a result of the investigation, plaintiff was charged with violating Administrative Directive 6.1, quoted above, in that he failed to tour the area of the inmate's cell between 9:14 p.m.

and 9:43 p.m.  In addition, he was charged with violating Administrative Directive 2.17, which provides that certain conduct on the part of correctional officers is "strictly prohibited," including "[f]ailure to properly conduct tours" and "[l]ying or giving false testimony during the course of a departmental investigation."

On October 19, 2004, plaintiff and his union representative attended a pre-disciplinary meeting.  The charges against the plaintiff were read and he was given an opportunity to present "mitigating factors."  He stated that the clock in his cubicle was not working, he used his own watch to keep track of time and he did not lie about his tours.

Plaintiff subsequently received written notice that effective December 10, 2004, he would be dismissed for violating Administrative Directives 6.1 and 2.17.  The notice stated that he failed to perform his required tours on June 11, 2004, falsified the log book and provided false information during the investigation.  The notice informed him that he had a right to appeal the dismissal in accordance with a collective bargaining agreement.

Plaintiff's union grieved the dismissal.  An arbitrator from the Connecticut State Board of Mediation and Arbitration heard three days of testimony.  In June 2006, the arbitrator issued a decision finding that plaintiff's dismissal was for proper cause.

5

(Def.'s Mem. Supp. Summ. J. Ex. 18.)  The arbitrator stated, "The fact of the matter is that tours of the hallway in which the inmate was located were not completed in accordance with the directives related to the specialized housing.  Unfortunately, instead of owning up to his failure to tour as required due to extenuating circumstances on the unit, the grievant throughout the investigation held to his story that he properly toured."

During the arbitration proceeding, plaintiff challenged his dismissal on the ground that it was significantly harsher than discipline given to others in connection with inmate suicides. He pointed to Todd Dennis, a black officer not of Jamaican origin, who received a five-day suspension after a suicide in BCC's restrictive housing unit in January 2005.  DOC's investigation of the suicide led to charges against Dennis for failing to make required tours and falsifying the log book in violation of Administrative Directives 6.1 and 2.17.  The arbitrator observed that plaintiff's case was "clearly distinguish[able]" from Dennis's because plaintiff's failure to tour the unit was proximate in time to the inmate's suicide, whereas Dennis's was not.[2]

---

[2] The report of the investigation of the January 2005 suicide, which plaintiff has submitted as an exhibit to his memorandum in opposition to the motion for summary judgment, shows that the suicide occurred at approximately 2:47 a.m., while Dennis was on an authorized break having been relieved by another officer named Ryan at 2:32 a.m.  According to Ryan's account, he toured the unit at 2:45 a.m., at which time the inmate appeared

III. Discussion

Plaintiff claims that his employment was terminated because of race and national origin discrimination in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment. The same standards apply to evaluating both claims. See Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) ("The elements of [Equal Protection] are generally the same as the elements of [Title VII] and the two must stand or fall together."); Demoret v. Zegarelli, 451 F.3d 140, 153 (2d Cir. 2006) (same).

At the summary judgment stage, employment discrimination claims are analyzed using the three-step, burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Plaintiff has the initial burden of presenting a prima facie case of discrimination. Texas Dep't Of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). This requires proof that he (1) is a member of a protected class; (2) was performing his duties satisfactorily; and (3) was discharged; (4) in circumstances supporting an inference of discrimination. See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

---

to be asleep. Two minutes later, another officer toured the unit and found the inmate hanging from a bed sheet. Videotape from a surveillance camera confirmed that Ryan toured the area at 2:45 a.m. in compliance with the requirement that the unit be toured at least once every fifteen minutes. Dennis was disciplined because he made entries in the log book indicating that he toured the unit at 12:15, 12:30, 2:00 and 2:30, when in fact he failed to do so as shown by the videotape.

A plaintiff may raise an inference of discrimination by showing that his employer "subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Id. at 39.  In order to raise this inference, the plaintiff must be "similarly situated in all material respects" to the individual he uses as a comparator.  Id.  Whether this test is satisfied typically presents a question of fact.  Id.  In a proper case, however, the issue can be resolved as a matter of law on a motion for summary judgment.  See Billue v. Praxair, Inc., No. 07-2359-cv, 2008 WL 4950991, *1 (2d Cir. Nov. 20, 2008); Woods v. Newburgh Enlarged City Sch. Dist., 288 F. App'x 757, 760 (2d Cir. 2008).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a nondiscriminatory reason for the challenged employment action.  Burdine, 450 U.S. at 253. If the defendant provides such a reason, it will be entitled to summary judgment unless the plaintiff can point to evidence showing that the proffered reason is pretextual and that the challenged action was based at least in part on unlawful discrimination.  See McDonnell Douglas Corp., 411 U.S. at 802-04.

To establish a prima facie case, plaintiff relies on the fact that he was treated less favorably than Officer Dennis. Defendants contend that this is insufficient.  Dennis and the plaintiff were similarly situated in that both were correctional

officers in the restrictive housing unit at BCC, both were subject to the same workplace standards and both violated the same Administrative Directives.  See Graham, 230 F.3d at 40.  This is sufficient to satisfy plaintiff's initial burden.

Defendants contend that plaintiff has failed to present evidence suggesting that their explanation for his dismissal is pretextual.  An employer's proffered reason may be pretextual if it is not the only reason for the challenged action.  Plaintiff alleges that he was terminated as a "scapegoat" after the inmate's family sued the DOC.  (Pl.'s Mem. Opp. Summ. J. at 9; Def.'s Mem. Supp. Summ. J. Ex. 8.)  Plaintiff notes that the family of the inmate who committed suicide on the night Officer Dennis neglected his duties did not sue the DOC.  (Pl.'s Mem. Opp. Summ. J. at 6, 8.)  Viewing the record in a manner most favorable to the plaintiff, a jury could find that his dismissal was motivated at least in part by DOC's concern about the lawsuit.

Defendants contend that, in any case, summary judgment is appropriate because plaintiff has failed to point to evidence supporting a reasonable finding that he was dismissed because of discrimination.  I agree.  A reasonable jury would have to conclude that plaintiff was dismissed because he violated DOC Administrative Directives 6.1 and 2.17 by failing to conduct required tours and providing false information during the

9

investigation.  This conduct is strictly prohibited and normally results in dismissal.  <u>See</u> DOC Administrative Directive 2.6.  The independent arbitrator's decision upholding the dismissal undercuts plaintiff's claim that he was dismissed because of discrimination.  <u>See</u> <u>James v. Conn. Dep't of Corr.</u>, No. 3:05-CV-1787(CFD), 2009 WL 279032, *5 (D. Conn. Jan. 14, 2009)(citing <u>Collins v. N.Y. City Transit Auth.</u>, 305 F.3d 113, 115 (2d Cir. 2002).

Plaintiff contends that a jury could find in his favor because Officer Dennis received a five-day suspension for violations of comparable seriousness.  Dennis does not fall outside plaintiff's racial group and plaintiff himself has admitted that he does not believe he was dismissed because he is black.  Accordingly, the claim of racial discrimination does not raise a proper issue for trial.

With regard to the claim alleging national origin discrimination, the fact that Dennis was treated more favorably would not permit a jury to find that plaintiff's Jamaican origin was a factor in his dismissal.  Plaintiff's case is distinguishable from Dennis's, as the arbitrator recognized.  The suicide that led to plaintiff's dismissal occurred on his watch.  By contrast, the suicide that led to Dennis's suspension occurred while he was off duty.  Unlike Dennis, moreover, plaintiff persisted in maintaining throughout the investigation that he

10

conducted his required tours even though the videotape clearly shows that he did not.

Plaintiff implies that his otherwise positive work record suggests that his dismissal was motivated by discrimination.  If the proffered reason for the dismissal was a negative evaluation of plaintiff's overall performance, his prior record of positive evaluations and commendations would have probative weight on the issue of discrimination.  But plaintiff was dismissed for specific violations of administrative directives.  In this context, his prior good record does not support an inference of discrimination.  If anything, his favorable annual reviews and commendations tend to undercut an inference that DOC officials harbored prejudice toward him because of his national origin.

III.  Conclusion

Accordingly, the motion for summary judgment is hereby granted.  The Clerk may close the file.

So ordered this 30th day of March 2009.

                                   /s/ RNC
                              Robert N. Chatigny
                          United States District Judge